## JOSIAH EMERY *vs.* BENJAMIN DAVIS.

Where one contracts to purchase goods on certain conditions to be by him performed, and receives them into his possession, but fails to perform the conditions on his part, he is liable to be charged as trustee of the owner of the goods.

If one having possession of goods under a contract which has ceased to be valid, be summoned as trustee, and afterwards has notice of a bill of sale of the same goods, bearing a date prior to the service, from the person with whom he contracted to a third person, and sets it forth with the facts in his disclosure; and thereupon the creditor objects that the assignment ought not to have any effect to defeat his attachment under the process, and the assignee is duly summoned into Court to try the validity of his assignment, and refuses to come in, and is defaulted, and the alleged trustee is adjudged to be such; the judgment is conclusive against all claim of the assignee upon the trustee under the bill of sale.

And if such assignee, during the pendency of the trustee process, obtains from the alleged trustee by false pretences, payment for the goods by the discharge of a debt against him and by the negotiable note of a solvent man, the amount may be-recovered back in an action for money had and received.

EXCEPTIONS from the Court of Common Pleas, REDINGTON J. presiding.

The action was for money had and received. The plaintiff had purchased of one *Argalis Pease*, prior to *October* 2, 1834, a carriage, for which he agreed to give $145 on certain conditions to be by him performed, and received the carriage into his possession. On the third of *November*, 1834, a process was served on the plaintiff as the trustee of *Pease*, which was entered and continued. The plaintiff disclosed as trustee, that after the service *upon him*, the defendant exhibited to him a bill of sale of the same carriage to him, *Davis*, dated *October* 2, 1834. The validity of this assignment was denied by the creditor, and the defendant was duly cited into Court to support his assignment, and although he came into the courthouse, and conversed with an attorney in relation to the citation, he did not enter any appearance, and was defaulted. The plaintiff's disclosure shew that he had neglected to perform the conditions on which he was to have the carriage, although the time of performance had elapsed, and he was adjudged to be trustee. An execution had issued on the judgment against the plaintiff as trustee, and a *scire facias* had been served upon him, but he

did not prove that he had paid any thing as trustee, or had delivered up the carriage to the officer. During the pendency of the trustee suit, and before any judgment had been rendered therein, *Pease,* acting as the agent of the defendant, saw the plaintiff at his residence at the distance of a number of miles from the court-house, and stated to him that the trustee action "had failed and would not stick," and that he was instructed by *Davis,* the defendant, to sue *Emery* for the carriage immediately, unless he paid over the price agreed upon. *Emery* had a claim for keeping horses, said by *Pease* to belong to *Davis.* This was allowed in part payment, and *Emery* gave a note with a surety to *Davis,* or order, for the balance. *Pease* as the agent of *Davis* gave a receipt to *Emery* that he had received payment for the carriage. There was much testimony recited in the bill of exceptions in relation to the agency of *Pease,* and the agency of *Davis* for a stage company, but it proves nothing satisfactorily, except that *Pease* acted as the agent of *Davis.*

The Judge instructed the jury, that they should first find whether a good title to the carriage did not pass to the plaintiff; that if it had been the property of the company and the defendant was their agent authorized to sell and receive pay, the title passed to the plaintiff; that if it was the defendant's property, the title passed to the plaintiff; that even if it was *Pease's* property, he would now be precluded by his acts and by the receipt from setting up title against the plaintiff; that if the conveyance to the plaintiff made title in him, the payment he made was no more than the defendant had a legal right to receive; and that therefore this action for money had and received could not be maintained, whatever other remedy the plaintiff might have in some other form of action. The verdict being for the defendant, exceptions were filed by the plaintiff.

*Vose,* for the plaintiff, contended, that money had and received, was the proper form of action. It is not necessary that the defendant should receive money, if he received what was considered by the parties equivalent to it. *Burrow,* 1012; 3 *Black. Com.* 163; 2 *Com. on Con.* 1; *Mason* v. *Waite,* 17 *Mass. R.* 560; *Morton* v. *Chandler,* 8 *Greenl.* 9. He urged, that the defendant

had no right to retain the money received of the plaintiff, independent of the manner in which it was obtained, either on his own account or as agent of the stage company. Had the jury been instructed, that if from the whole evidence in the case the defendant had money in his hands which in equity and good conscience belonged to the plaintiff, or money which he had obtained by fraud and imposition upon the plaintiff, there can be no question but that they would have returned a verdict for the plaintiff. The instructions are objectionable, because they were irrelevant, having nothing to do with the issue made up between the parties, and calculated to mislead the jury. The instructions make the whole case to depend on the title, when that was not in question. *Davis* disclaimed owning the property by his bill of sale, and suffered himself to be defaulted, after being summoned in. But although the plaintiff's title was good, he was indebted for the carriage to *Pease*, and was adjudged his trustee. The defendant, by *Pease*, his agent, obtained the money of the plaintiff by false and fraudulent representations, and must pay it back. The intimation of the Judge that the remedy was in some other form of action was erroneous. Where money has been obtained by fraud, it may be recovered back in an action for money had and received. 4 *Mass. R.* 488; *Burr.* 1012; 17 *Mass. R.* 563; 1 *Doug.* 138; 17 *Pick.* 549; 2 *Stark. on Ev.* 109; 4 *M. & Selw.* 478; *Chitty on Con.* 191.

*Wells* and *Potter*, for the defendant, contended, that the case shew that *Pease*, as sub-agent of *Davis*, the agent of the stage company, sold the carriage to the plaintiff, and he was bound to pay for it to the right owner. The plaintiff's title was perfectly good under the sale, and the only question was, to whom should he make payment. The payment was rightly made to *Davis*, the agent of the company. The plaintiff knew that *Pease* only acted as the agent of the company before he was charged as trustee, and that judgment can only be binding upon the plaintiff and *Pease*. The defendant is not bound by it. This was not an assignment, the validity of which was to be tried by citing the defendant into Court in that suit, but a mere question to whom the debt was due. But were it otherwise, the plaintiff cannot now maintain this suit in this form of action. The plaintiff has paid nothing, and he may

now come in on the *scire facias* and disclose, and be discharged, or *Pease* may pay the debt. They cited 1 *Greenl.* 125; 6 *ib.* 353; 9 *Mass. R.* 408; 8 *Pick.* 71.

The opinion of the Court was drawn up by

WESTON C. J.—By the exceptions, either party may avail himself of the dockets, records, writs and executions, referred to. Upon examining the disclosure of the plaintiff, it appears that the carriage which occasioned the controversy, was in *May* or *June*, 1834, left in the hands of the plaintiff, who was summoned as trustee, under an agreement on his part to purchase it, but upon a condition precedent, with which he had not complied, either when the trustee process was served upon him, or at the time of the disclosure. When he received the carriage of *Pease*, it was his property; for the title of the defendant, either for himself or the stage company, did not accrue, until *October* 2, 1834, the date of his bill of sale, as set forth in the disclosure. In the exceptions, in reciting a part of the disclosure, it is erroneously stated to have been the second of *November*, instead of *October*. The means of correction, however, are afforded by the original, which is a matter of record, and as such is referred to. But whether dated in *November* or *October*, does not affect the merits of the case.

The contract of sale between *Pease* and the plaintiff, not having been perfected, when the latter was summoned, he was then the trustee of the carriage, as the property of *Pease*, and it was liable to be attached in his hands by the trustee process, unless it had been previously assigned to *Davis*. Being notified of such an assignment, the plaintiff sets it forth in his disclosure. The validity of this assignment, the attaching creditor, or creditors, had a right to contest. *Stat.* 1821, *c.* 61. § 7. They did so; and the defendant, the supposed assignee, was cited in, but did not appear, and his non-appearance was entered of record.

In such case the statute provides, that " the assignment shall have no effect to defeat the plaintiff's attachment." The trustee must be charged as such, the alleged assignment notwithstanding. We think it results, that the supposed assignee is concluded by this adjudication. He was called in, that he might have opportunity to vindicate his title. Unless he is concluded, the trustee,

who is a mere stakeholder, after being made liable by law to the attaching creditor, may be subjected to the hazard of being again charged at the suit of the assignee. We cannot give the statute a construction, which would lead to consequences, so manifestly unjust. By proceedings therefore, in which the defendant was cited as a party, and might have been heard as such, as between him and the plaintiff, his title to the carriage is barred. Nor could he have any just or legal right to receive or to retain payment for it of the plaintiff.

It is true, the case shows, that the defendant received payment, before a citation to appear was served upon him; but it was obtained under false pretences, made by his agent, for the civil consequences of which he is responsible. He cannot rightfully enjoy the fruits of the fraud of his agent, merely because it may never before have been brought home to his knowledge. But if the money was rightfully received, the assignment, upon which his right was based, being now barred, the consideration has failed, and he has no right to retain it.

It is contended, that the defendant cannot be charged, first, because if he received the plaintiff's money, it was as agent for the stage company, and not in his own right. Secondly, that he never received money or its equivalent. From the evidence reported, it would seem that the defendant took the responsibility of the business upon himself, and there does not appear to be any other tangible party, to whom the plaintiff can resort. If there were others, to whom the defendant might be held to account, it does not appear that he has done so. And if he has, he had notice of the claims of the attaching creditor, and of the impending and final liability of the plaintiff as trustee. As to payment, he admits it. He acknowledges the agency of *Pease*, and that whatever he received was the same, as if paid to himself. *Pease*, professing to act as the agent of the defendant, accepted a discharge from the plaintiff of his claim for horse keeping, and the negotiable note of a solvent man as payment; and this being adopted and assented to by the defendant is equivalent to the receipt of so much money by him. The Judge instructed the jury, that whether property in the carriage had been in the company, the defendant or *Pease*, the title of the plaintiff thereto could not be impeached, that the

defendant therefore had a right to receive the money, and that the action could not be maintained. It was a decisive legal opinion of the Court against the action, under any view of the evidence, which could be taken. The exceptions are sustained, the verdict set aside, and a new trial granted.